UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

K & S DEVELOPMENTS LLC,

Plaintiff,

v.

CITY OF SEATAC, COLLIERS INTERNATIONAL WA, et al.,

Defendants.

CASE NO. C13-499 MJP

ORDER ON PLAINTIFF'S MOTION TO ABSTAIN

This matter comes before the Court on Plaintiff's motion to abstain and/or remand its claims to the Superior Court of King County. (Dkt. No. 20.) Having reviewed the motion, Defendant Colliers' Response (Dkt. No. 21), Defendants SeaTac et al.'s Response (Dkt. No. 22), Plaintiff's Reply (Dkt. No. 25), Defendants' Notice of Removal and Plaintiff's state court Complaint (Dkt. No. 1), and all related papers submitted by the parties, the Court GRANTS in part and DENIES in part Plaintiff's motion.

The Court DENIES Plaintiff's motion to the extent that it seeks Pullman abstention and to have its federal claims stayed until final determination by the state court. The Court GRANTS

Plaintiff's motion to the extent that it seeks remand of its claims to state court on the basis that its federal claims are unripe for adjudication.

**Background**

In 2003 Plaintiff K&S Developments, LLC, purchased real property known as the Sea-Tac Center using hard money loans. (First Am. Compl. ["FAC"] ¶ 11, Dkt. No. 1, Ex. 1; Colliers Resp. at 3, Dkt. No. 21.) K&S sought to develop the property, but encountered various regulatory obstacles including a moratorium on "park-and-fly" facilities adopted by Defendant City of SeaTac. (FAC ¶¶ 12–16.) In February 2008, after several years of negotiation, K&S and the City of SeaTac entered into a development agreement to build a mixed-use residential complex on the property. (FAC ¶ 19.) The real estate crash and recession intervened, and K&S defaulted on its loans. (Pl.'s Mot. Abstain at 4, Dkt. No. 20; Colliers Resp. at 3.) One of its lenders filed for judicial foreclosure. (Selig Decl. at Ex. D, Dkt. No. 22.) The City of SeaTac, as an undisclosed principal acting through Defendant Colliers, then approached K&S and offered to acquire the property through the purchase of the loans and a deed in lieu of foreclosure. (FAC ¶ 27.) This deed was executed on December 24, 2009. (FAC ¶ 28.)

In its complaint, originally filed in King County Superior Court, K&S alleges that SeaTac's conduct during the development process, its use of secrecy during negotiations for purchase of the property, and its application (through Colliers) of illicit pressure on K&S's lenders resulted in a less than voluntary transaction in which the city paid below fair market value for the property. (FAC ¶¶ 11–30.) According to K&S, the negotiations and deed-in-lieu transaction amounted to inverse condemnation under Washington State Constitution and laws, a violation of the federal takings clause, deprivation of the federal rights to substantive and

procedural due process and equal protection, and retaliation for conduct and speech protected by the First Amendment. (FAC ¶¶ 31–67.) K&S also alleges a variety of related state contract and tort claims, and seeks declaratory relief and damages pursuant to § 1983. (FAC ¶¶ 68–99; id. at 13.)

Defendants removed to federal court on the basis of a federal question on March 18, 2013.

K&S filed a motion to abstain on June 20, 2013, arguing that this Court should decline to exercise jurisdiction based on the abstention doctrine named after Railroad Commission of Texas v. Pullman, 312 U.S. 496 (1941) ("Pullman abstention"), and further that the federal takings claim is unripe for adjudication under the second prong of the ripeness test established in Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172 (1985). (Pl.'s Mot. Abstain at 7–14.) Defendants Colliers and City of SeaTac et al. oppose Pullman abstention on legal and practical grounds but omit any discussion of the ripeness of K&S's claims in federal court. (Colliers Resp. at 6–9; SeaTac Resp. at 6–7.) SeaTac further notes that it will raise many simple contractual defenses to K&S's claims and that if its arguments succeed, K&S's constitutional contentions may never come into play. (SeaTac Resp. at 4–6.)

## Analysis

I. Pullman Abstention

Abstention from the exercise of federal jurisdiction is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Colorado River Water Conservation Dist. v. United States, 424 US. 800, 813 (1976) (quoting County of

Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188 (1959)). Pullman abstention is a well-established exception to this general duty, see 17A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4242 (3d ed.), though in recent years it has been partially displaced by the more efficient procedure of certifying questions to state high courts. See Arizonans for Official English v. Arizona, 520 U.S. 43, 75–76 (1997).

According to the Ninth Circuit, Pullman abstention is appropriate where:

> (1) the federal plaintiff's complaint requires resolution of a sensitive question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear.

Spoklie v. Montana, 411 F.3d 1051, 1055 (9th Cir. 2005). Pullman abstention is properly invoked only "where the order to parties to repair to the state court would clearly serve an important countervailing interest." County of Allegheny, 360 U.S. at 188–89. That is, courts should abstain only "in exceptional cases where principles of comity and federalism justify postponing the exercise of jurisdiction that Congress conferred upon federal courts." Pearl Inv. Co. v. City and County of San Francisco, 774 F.2d 1460, 1462 (9th Cir. 1985). In contrast to other abstention doctrines, federal courts are never required to abstain based on Pullman because the doctrine does not implicate subject matter jurisdiction. Columbia Basin Apartment Ass'n v. City of Pasco, 268 F.3d 791, 802 (9th Cir. 2001).

Although some of its ancillary claims are alleged with minimal detail, K&S's complaint appears to meet the second prong of the abstention analysis. A favorable resolution of the state inverse condemnation claim would moot the federal takings claim by providing K&S with the compensation it seeks—and it seems likely that it would moot the remainder of the federal claims as well. But this fact merely raises a separate question about the ripeness of the federal claims. See infra at 8.

As to the first prong, requiring a "sensitive question of federal constitutional law," K&S argues that land-use planning generally is a "sensitive area of social policy upon which federal courts ought not to enter unless no alternative to its adjudication is open." (Pl.'s Mot. Abstain at 8 (quoting Columbia Basin Apartment Ass'n, 268 F.3d at 801–02).) An as-applied challenge to a single real estate transaction between a city and a developer, however, bears scant resemblance to the politically delicate challenges to city-wide regulations K&S cites in support of this proposition. See, e.g. San Remo Hotel v. City and County of San Francisco, 145 F.3d 1095, 1105 (9th Cir. 1998) (concerning a city housing conversion ordinance); Sinclair Oil Corp. v. County of Santa Barbara, 96 F.3d 401, 409 (9th Cir. 1996) (concerning a county land-use plan designating certain areas as environmentally sensitive habitats); C-Y Dev. Co. v. City of Redlands, 703 F.2d 375, 377 (9th Cir. 1983) (concerning a city ordinance implementing a voter initiative that limited the number of residential building permits for subdivision development projects). Not every municipal purchase of real estate can be considered "land-use planning" as the Ninth Circuit has used the phrase. See, e.g., Picard v. Bay Area Regional Transit Dist., 823 F.Supp. 1519, 1526 (N.D. Cal. 1993) (holding that a condemnation delay action did not implicate a sensitive area of social policy for the purpose of Pullman analysis); GBI Holding Co. v. City of Chelan, 2012 WL 1610093, *5 (E.D. Wash. May 7, 2012) (declining to abstain under Pullman because the plaintiff had merely requested damages under § 1983 and thus "there is no reason to conclude that allowing this claim to proceed in federal court would interfere with substantive questions of local land use planning or zoning choices").

Moreover, recent cases in which the Ninth Circuit has considered Pullman abstention demonstrate that the "sensitive question" inquiry is not concerned solely with subject matter, but with the federal constitutional question raised by the plaintiff. See Potrero Hills Landfill, Inc. v.

County of Solano, 657 F.3d 876, 888 (9th Cir. 2011) (reciting that Pullman abstention is only available where "the federal plaintiff's complaint requires resolution of a sensitive question of federal constitutional law"). Though the outer contours of the federal takings clause may be contentious, the analysis of a one-time, apparently voluntary real-estate transaction—as opposed to involuntary condemnation or a city-wide land-use ordinance—seems less likely to trigger weighty constitutional questions.

Even if the "sensitive question" prong is fulfilled, however, K&S cannot meet the third prong, which requires that the possibly determinative issue of state law be unclear. According to the Ninth Circuit, "uncertainty for purposes of Pullman abstention means that a federal court cannot predict with any confidence how the state's highest court would decide an issue of state law." Pearl Inv. Co., 774 F.2d at 1465. K&S notes that the Washington State Constitution's Article I, Section 16 affords greater protection to Washington citizens than the Fifth Amendment, but fails to allege that the Washington Supreme Court's takings jurisprudence is in any way unclear. Cf. Columbia Basin Apartment Ass'n, 268 F.3d at 802–03 (describing the complex intersection of a state statute, local ordinance, and a separate Washington state constitutional provision that had never been addressed in combination by any state court).

In addition, K&S argues that SeaTac's purchase of debt violates Article VIII, Section 7 of the Washington State Constitution and that its takings claim depends on resolution of this issue. (Pl.'s Mot. Abstain at 10–12.) K&S contends that this issue is unclear because its claim is novel. But as Defendant Colliers suggests (Colliers Resp. at 7–8), the Washington Supreme Court has held that Article VIII, Section 7 entails a straightforward, two-step analysis:

> First, the court asks if the funds are being expended to carry out a fundamental purpose of the government? If the answer to that question is yes, then no gift of public funds has been made. The second prong comes into play only when the expenditures are held to not serve fundamental purposes of government. The court then focuses on the consideration

received by the public for the expenditure of public funds and the donative intent of the appropriating body in order to determine whether or not a gift has occurred.

CLEAN v. State, 130 Wn.2d 782, 797–98 (1996). While K&S stresses that its claim concerns an allegedly unconstitutional loan rather than a gift, Pl's Reply at 6 (citing State Higher Education Assistance Authority v. Graham, 84 Wn.2d 813, 817 (1974)), the plaintiffs in the more recent CLEAN alleged that the transaction at issue was either a loan or a gift, and the same test applied in either case. CLEAN, 130 Wn.2d at 797. And regardless of whether a loan or a gift is at issue, the two-step analysis is applied with the understanding that "manifest purpose of these provisions . . . is to prevent state funds from being used to benefit private interests where the public interest is not primarily served." CLEAN, 130 Wn.2d at 797 (citing Japan Line, Ltd. v. McCaffree, 88 Wash.2d 93, 98 (1977)). While this may be the first time the analysis has been applied to these particular facts, the Washington State Supreme Court has certainly made the test simple to administer. The Ninth Circuit has indicated that novelty alone does not suffice to make a state law unclear: "Resolution of an issue of state law might be uncertain because the particular statute is ambiguous, or because the precedents conflict, or because the question is novel and of sufficient importance that it ought to be addressed first by a state court." Pearl Inv. Co., 774 F.2d at 1465 (emphasis added). The question whether the purchase of municipal debt violates the two-step analysis described above does not meet this standard.

The basic facts of this case do not appear to justify invoking an extraordinary doctrine aimed at maintaining the balance between state and federal courts on matters of evident constitutional importance. Accordingly, the Court DENIES Plaintiff's Motion to Abstain to the extent that it seeks Pullman abstention.

II. Ripeness

In addition to arguing for abstention, K&S briefly points out that its federal takings claim is unripe under Williamson County Regulatory Commission v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985). (Pl's Mot. Abstain at 13–14.) On this point, K&S is correct. Under Williamson's ripeness test, a federal takings claim is not ripe until first, there is a final decision by the government (here, fulfilled by the 2009 transaction) and second, the plaintiff has been denied compensation by the state (unless the state procedure is inadequate). Williamson, 473 U.S. at 186–97. The second requirement follows from the fact that the "Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation," id. at 194, and the same analysis applies to takings claims that allege unreasonable delay. Sinclair Oil Corp. v. County of Santa Barbara, 96 F.3d 401, 407 (9th Cir. 2006). K&S had been in the process of seeking compensation for its inverse condemnation claim in state court when its action was removed to this Court. Unsurprisingly, given Plaintiff's choice of forum, the Ninth Circuit has held that Washington State's takings law is adequate. Macri v. King County, 126 F.3d 1125, 1129 (9th Cir. 1997), abrogated on other grounds by Crown Point Dev. Inc. v. City of Sun Valley, 506 F.3d 851 (2007).

The ripeness of a federal takings claim with regard to exhaustion of state proceedings is a prudential rather than jurisdictional consideration. See Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 733–34 (1997); Guggenheim v. Goleta, 638 F.3d 1111, 1116–18 (9th Cir. 2010). But Defendants can offer no compelling reason why this Court should determine whether K&S deserves compensation for the alleged taking before it has been denied compensation from the government. Defending the claims in state court will present no serious hardship to the parties. K&S's federal takings claim is therefore unripe and should be dismissed.

If the federal takings claim is dismissed, however, the question remains whether the Court can maintain supplemental jurisdiction over the state claims in light of K&S's vaguely pled § 1983 claims, alleging violations of equal protection, substantive and procedural due process, and the First Amendment. See 28 U.S.C. § 1367(a), (c). The § 1983 claims are pled with minimal detail and appear to overlap entirely with the takings claims. For example, a close inspection of the complaint fails to reveal which protected "statements, objections, expressive conduct and petitions" led to the alleged First Amendment "retaliation" (which consists of the same conduct complained of in the takings claims). See FAC ¶¶ 56–60. Indeed, all of the § 1983 claims derive from the exact conduct described in the takings claims, namely, the City's "conduct throughout the development process" and "the deed in lieu of sale transaction." See FAC ¶¶ 39–40, 45–46, 51–52. Although it is possible to state due process and equal protection claims that arise from the same conduct as but are nonetheless distinct from an accompanying takings claim, see Shanks v. Dressel, 540 F.3d 1082, 1086–87 (9th Cir. 2008), it is not at all apparent that K&S is seeking separate damages for the non-takings claims.

In these circumstances, where the plaintiff may receive the exact compensation it seeks for its due process and equal protection claims through a takings claim that ought to be heard in state court, the Williamson prudential ripeness analysis is relevant to the due process and equal protection claims as well. All of K&S's non-takings federal claims are deeply intertwined with the inverse condemnation claim and, like the federal takings claim, they may be mooted by a favorable determination on the inverse condemnation claim. Although the analysis of a generic due process or equal protection violation does not turn on the compensation language of the federal takings clause, here it would be premature to determine damages for companion constitutional claims prior to a determination of whether the conduct amounts to a taking in the

first place. Therefore, like the federal takings claim, the other § 1983 claims should not be heard prior to a final denial of compensation by the state court. See also Flying J Inc. v. City of New Haven, 549 F.3d 538, 543 (7th Cir. 2008) (applying Williamson ripeness requirements to due process and equal protection claims unless an equal protection claimant pleads either "(1) the malicious conduct of a government agent, in other words, conduct that evidences a spiteful effort to 'get' him for reasons unrelated to any legitimate state objective; or (2) circumstances, such as prayer for equitable relief and a claim that would evaporate if the government body treated everyone equally that sufficiently suggest that the plaintiff has not raised just a single takings claim with different disguises.").

Accordingly, the federal takings claim and the remaining § 1983 claims are DISMISSED without prejudice and, since the Court now lacks original jurisdiction over the remaining state claims, the state claims are REMANDED to King County Superior Court.

**Conclusion**

The Court GRANTS in part and DENIES in part Plaintiff K&S Development's Motion to Abstain. The Court DENIES K&S's motion to the extent it seeks Pullman abstention because the first and third requirements for Pullman abstention are not met. The Court GRANTS dismissal without prejudice of the federal takings claim because it is unripe prior to denial of compensation by the state court and ORDERS that the other federal § 1983 claims be dismissed without prejudice because they are similarly unripe. Because the Court no longer has original jurisdiction over the case, the Court ORDERS that the state claims be remanded to King County Superior Court.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 10th day of October, 2013.

Marsha J. Pechman
United States District Judge

ORDER ON PLAINTIFF'S MOTION TO ABSTAIN- 11